J-S60015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.S., A MINOR CHILD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.M., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 652 WDA 2017 |

Appeal from the Order Entered April 17, 2017
In the Court of Common Pleas of Clarion County
Orphans' Court at No(s):  Case No. 12 OC 2017

BEFORE:   OLSON, DUBOW, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                **FILED NOVEMBER 16, 2017**

R.M., Sr. ("Father") appeals from the order dated April 13, 2017, and entered on April 17, 2017, granting the petition filed by the Clarion County Children and Youth Services ("CYS" or the "Agency"), to involuntarily terminate his parental rights to his female child, R.S., born in January 2015, with J.S. ("Mother"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511.  We affirm.

On January 18, 2017, CYS filed the petitions for the involuntary termination of Father's and Mother's parental rights to R.S.  On April 13, 2017, the trial court held an evidentiary hearing on the termination

_____

* Former Justice specially assigned to the Superior Court.

petitions.  At the hearing, Mother chose to voluntarily relinquish her parental

rights to R.S.  CYS presented the testimony of its employees:  Cheryl Miller

(an ongoing caseworker for CYS) and Nicole Novicki (the unit supervisor of

the caseworkers at CYS).  N.T. Hearing, 4/13/17, at 9 and 32.  CYS then

presented the testimony of R.S.'s maternal uncle, who is also her foster

father.  *Id.* at 44-46 and 49.  Father and Mother, who were both

incarcerated, testified on their own behalf.[1]  *Id.* at 50 and 84.

The trial court fully set forth the factual and procedural background of

this appeal, as follows.

> [R.S.] was born [] a drug-exposed baby and spent
> approximately one week in the hospital shortly after her birth.
> R.S.'s paternity was not formally established by CYS until over a
> year after her birth; however, Father knew from speaking with
> Mother prior to R.S.'s birth that he was R.S.'s father.  Father
> went to the hospital the day after R.S.'s birth to stay with her
> and Mother, and while he was there he performed duties such as
> feeding R.S. and changing her diaper.  Once R.S. was released
> from the hospital, Father spent approximately three days per
> week at Mother's home helping to care for R.S.  He provided
> food and diapers during this time.  This arrangement continued
> until Father was incarcerated on April 29, 2015.  After his
> incarceration, Father spoke with Mother on the phone daily to
> obtain updates on R.S., and Mother sent Father approximately
> 100 photos of R.S.  This arrangement continued until October of
> 2015.  During his incarceration, Father did not provide any
> financial support to R.S.
>
> In October [] 2015, R.S. was taken into protective custody after
> being found at the site of an active methamphetamine lab.

_____

[1] Attorney Terry R. Heeter, the court-appointed guardian *ad litem* ("GAL")
representing the child, R.S., cross-examined Father.  N.T. Hearing, 4/13/17,
at 4 and 68.  The GAL also filed a brief on behalf of R.S.

Mother was incarcerated at that time. R.S. was eventually placed with a maternal uncle and aunt who remain her foster parents to this day. R.S. was declared dependent on November 5, 2015. Since October [] 2015, she has lived with her foster family, with the exception of one [] five-week period in 2016, from May 24 through July 1, when she was returned to Mother's care. She was removed from Mother's care in July 2016 and placed with her foster family because Mother was re[-]incarcerated on a parole violation. Father testified that during the short period when R.S. was living with Mother in 2016, he spoke on the phone with Mother and [R.S.] every day.

Father remained incarcerated until August 15, 2016, when he was released to a halfway house in Erie. On or about August 18, 2016, Father spoke with a CYS employee about arranging a supervised visit with R.S. CYS arranged weekly visits with R.S., but Father had to miss the first meeting because the halfway house did not have sufficient notice of the visit. CYS was prepared to continue with the second scheduled visit. However, before that visit could occur, Father absconded from the halfway house, on or about August 27[, 2016]. Father's whereabouts were unknown to CYS from the time he absconded until he was rearrested on March 2, 2017.[1] The CYS caseworker testified that Father has not made any progress on remedying the circumstances that led to dependency throughout the life of the case, as he was either incarcerated or absconding at all relevant points. He had also not made any progress on Family Service Plan goals due to his incarceration.

Father testified that he visited with R.S. twice during August or September [] 2016, while he was absconding from parole. These two visits were the only times he saw R.S. since his incarceration in April [] 2015, and he had not provided any financial support, shelter, clothing, or food. He alleges that he was never notified that CYS had arranged visits with R.S. while he was at the halfway house. Father also alleges that he sent approximately six letters to CYS during his incarceration in 2016, and received only one response. In these letters, he requested pictures, phone calls, and visits with R.S., as well as general updates on her case. During his incarceration, he completed the "Inside Out" parenting class at SCI Forest, as well as four months of intensive drug and alcohol treatment.

The CYS supervisor overseeing R.S.'s case testified that she had received two letters from Father during the life of the case. CYS sent information to Father while he was incarcerated, including a release, letters regarding domestic relations and [HIPAA (Health Insurance Portability and Accountability Act)], information on adoption and the Safe Families Act, a signature page to acknowledge receipt, and information regarding his right to counsel. CYS sent a second letter to Father when R.S. was returned to Mother's care in May [] 2016. In response to Father's inquiries about visiting [R.S.] while he was incarcerated, CYS explained that it had an internal policy not to facilitate visits in state correctional institutions, but that Mother could arrange visits of her own volition. Father testified that R.S. never visited him in prison because there was a lengthy wait period before a minor could be approved on his visitors list.

Testimony at the hearing of both the CYS caseworker and the foster father indicated that R.S. is thriving in her foster environment. She is a happy and healthy child and has formed strong bonds with her foster parents and their two children. R.S. calls her foster parents "mom" and "dad," and believes their children are her siblings. She does not know or ask about her natural parents, as she is too young to remember the events of the past two years. She attends family activities, sporting events, and daycare. While her foster parents desire to adopt R.S., they remain open to allowing her to have a relationship with her natural parents in the future.

_____

[1] After his apprehension, Father was charged with Possession of a Controlled Substance, as he had a small amount of marijuana on his person when he was arrested.

Trial Court Opinion, 6/7/17, at 1-4 (footnote in original) (internal citations omitted).

On April 17, 2017, the trial court involuntarily terminated Father's parental rights to R.S. On April 21, 2017, Father filed a motion for reconsideration of the termination order. On April 26, 2017, the trial court denied the motion, citing Pennsylvania Orphans' Court Rule 8.2(c) (providing

- 4 -

that motions for reconsideration are not permitted to any order in involuntary termination matters under the Adoption Act). On May 2, 2017, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2, 3]

In his brief on appeal, Father raises one issue, as follows:

Did the Orphans' Court abuse its discretion and err as a matter of law in ruling Clarion County Children and Youth met its burden of proof necessary to succeed on its Petition for Involuntary Termination under 23 [Pa.C.S.A. §] 2511(a)(1), (2) & (5), when Appellant made diligent efforts to form a bond with [R.S.] while incarcerated and will be released from incarceration in approximately August of 2017?

Father's Brief at 4.[4]

_____

[2] In a separate decree dated April 13, 2017 and entered on April 17, 2017, the trial court granted the petition to voluntarily terminate Mother's parental rights to R.S., and for CYS to confirm consent to R.S.'s adoption without further consent of Mother. Mother did not file an appeal from the termination of her parental rights and she is not a party to the instant appeal.

[3] In a separate order dated December 15, 2016 and entered on December 19, 2016, the trial court changed R.S.'s permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351. Father did not appeal this order. *See* Notice of Appeal, 5/2/17, at 1.

[4] The trial court noted that Father raised six issues in his concise statement, and that his first, third, fourth, and sixth issues related to section 2511(a), while his second and fifth issues related to section 2511(b). Trial Court Opinion, 6/7/17, at 5. Father's first issue was a challenge to the sufficiency of the evidence for termination under section 2511(a)(1), (2), and (5); his third issue was an argument that the trial court erred in terminating Father's parental rights based solely on his incarceration; his fourth issue was an argument that the trial court erred in failing to consider his attempt to bond with R.S. while he was incarcerated; and his sixth issue was an argument

*(Footnote Continued Next Page)*

In reviewing an appeal from an order terminating parental rights, we

adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if

*(Footnote Continued)* ―――――――――――――

that the trial court erred in finding that he could not remedy the conditions leading to R.S.'s placement in a reasonable period of time. We find these issues relating to section 2511(a) are subsumed in the issue raised in Father's brief. In the second issue in the concise statement, Father asserted that the trial court erred in terminating his parental rights based solely on environmental factors and, in the fifth issue, Father asserted that the trial court erred in finding that the termination would not harm R.S.'s welfare. We find that the issues related to section 2511(b) are not subsumed in the issue raised in Father's brief. Father failed to preserve the challenge to section (b) in both his concise statement and statement of questions involved portion of his brief. Moreover, he failed to discuss the sufficiency of the evidence under subsection (b) with citation to relevant authority or develop the issue in any other meaningful fashion capable of review in his brief on appeal. Thus, we deem any challenge to the sufficiency of the evidence to support the termination under section 2511(b) waived. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466-467 and n. 3 (Pa. Super. 2017) (citing ***Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006)) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal); and ***In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting ***In re A.C.***, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). Further, we note that the trial court's June 7, 2017 opinion included a thorough discussion of the standard of review and the evidence in the record that it found supported the termination of Father's parental rights under subsection (b). Had we not concluded that any challenge to subsection (b) was waived, we, therefore, would have affirmed the trial court's determination as to the evidence supporting the termination of Father's parental rights under that subsection on the basis of the discussion in the trial court's opinion.

they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As [the Pennsylvania Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction,

without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will consider section 2511(a)(1) and (2) together, as did the trial court. Section 2511 provides, in relevant part, as follows:

### § 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

- 8 -

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

With respect to subsection 2511(a)(1), our Supreme Court has held as follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated:

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (internal citations omitted).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or

refusal cannot or will not be remedied. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002).

With regard to a parent's incarceration, in ***In re Adoption of S.P.***, our Supreme Court reiterated the standard of analysis pursuant to section 2511(a)(1) for abandonment and added as follows:

> [a]pplying [***In re: Adoption of McCray***,] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." [331 A.2d 652, 655 (Pa. 1975)]. We observed that the father's incarceration made his performance of this duty "more difficult." ***Id.***

> * * *

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

***In re Adoption of S.P.***, 47 A.3d at 828 (quoting ***In re: Adoption of McCray***, 331 A.2d at 655) (footnotes and internal quotation marks omitted in original). Further, the Supreme Court stated, "incarceration neither

compels nor precludes termination of parental rights." *In re Adoption of S.P.*, 47 A.3d at 828 (adopting this Court's statement in *In re Z.P.*, 994 A.2d 1108, 1120 (Pa. Super. 2010)).

The Supreme Court addressed the relevance of incarceration in termination decisions under section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 947 A.3d at 829.

After revisiting its decision in *In re: R.I.S.*, 36 A.3d 567 (Pa. 2011), regarding incarcerated parents, the Supreme Court stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard,

- 11 -

trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

***In re Adoption of S.P.***, 47 A.3d at 830-31.

With regard to section 2511(a)(1), Father challenges the sufficiency of the evidence to support termination where he was incarcerated and using all available means to maintain a bond with R.S. ***See*** Father's Brief at 8 and 17-18. Father urges that the evidence shows, at most, only the four-and–a-half-month time period when he absconded from the halfway house, prior to the filing of the involuntary termination petition, in which CYS could argue that he evidenced a settled purpose of relinquishing his parental claim to R.S. ***Id.*** at 18-20. Father explains that, during this time period, between September of 2016 and the filing of the petition on January 18, 2017, he "had served his complete sentence and was awaiting his paperwork to go through on his release." ***Id.*** at 20. Father reasons, "[i]nstead of continuing to wait for the paperwork, he failed to return" to the halfway house. ***Id.*** at 19-20. Father claims that, during this time period while he had absconded from the halfway house, he continued to communicate with Mother about R.S. ***Id.*** at 20. He states that the evidence was undisputed that, on two occasions in September 2016, he had in-person visits with R.S. at Mother's residence. ***Id.*** Father also argues that, since he absconded for only four and a half months, the trial court should have considered the entire six-month period before the petition was filed. Earlier in the six-month period,

Father claims that he was incarcerated, and was taking extensive measures to build a bond with R.S. and rehabilitate himself through programs offered at prison. *Id.* at 21.

With regard to section 2511(a)(2), Father challenges the sufficiency of the evidence to support termination where he was incarcerated at the time of the hearing, and anticipated being released from his incarceration in August of 2017. Father's Brief, at 9. Father asserts that there are no facts of record that would demonstrate that he will be unavailable to care for R.S. upon his release.

In its opinion, the trial court stated as follows:

The Supreme Court has analyzed the effect of a parent's incarceration on the termination of parental rights proceedings specifically with regard to § 2511(a)(1) and (2). Incarceration, in and of itself, cannot serve as the sole basis for involuntary termination of parental rights. *In re McCray's Adoption*, 331 A.2d 652, 655 (Pa. 1975). However, when the grounds alleged for termination are failure to perform parental duties under § 2511(a)(1), the court may consider the effect incarceration has had the on parent's attempts to perform parental responsibilities. Specifically, the court "must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness 'in declining to yield to obstacles,' his other rights may be forfeited." *Id.* More generally, the parent has a duty to affirmatively maintain a place in the child's life, "even in difficult circumstances." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). Thus, while the court may not terminate parental rights solely based upon the parent's incarceration, the parent may not invoke incarceration as a *per se* bar to termination of parental rights when the parent has not taken affirmative action during incarceration to maintain the parent-child relationship. *In re E.A.P.*, 944 A.2d 79, 82-83 (Pa. Super. 2008).

- 13 -

When the grounds for termination are parental incapacity under § 2511(a)(2), incarceration may properly be the determinative factor in finding that the parent has caused the child to be "without essential parental care, control or subsistence necessary for his physical or mental well-being." 23 Pa.C.S.A. § 2511(a)(2). "Incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control or subsistence and the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2)." *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) (internal quotations and citations omitted).

With these principles in mind, the court found, following a full evidentiary hearing, that CYS has adduced clear and convincing evidence that Father's parental rights to R.S. should be terminated under § 2511(a)(1), (2) and (5). Under § 2511(a)(1), Father has failed to perform parental duties for the six-month period before the petition to terminate his parental rights was filed, and has indeed failed to perform his parental duties for the majority of R.S.'s life. In the six months preceding the petition, Father was incarcerated, briefly living at a halfway house, and then abscond[ed] from parole. During his brief stint in the halfway house, CYS made efforts to allow Father to have supervised visits with R.S. Father had an opportunity to perform his parental duties and bond with R.S. after his incarceration. Instead, he chose to abdicate those duties and to abscond from parole. While Father did visit R.S. twice after absconding, these visits could not have established Father in "a place of importance in the child's life." *In re B., N.M.*, 856 A.2d at 856. He did not provide any type of support to R.S. during those visits, and apparently only saw R.S. twice during the approximately six months he absconded from parole. Thus, termination under § 2511(a)(1) was proper.

Similarly, Father has caused R.S. to be without "essential parental care, control or subsistence" under § 2511(a)(2), and termination of his parental rights was proper on these grounds. Father cared for R.S. during the first few months of her life, when he spent approximately three days per week with her. Since that time, Father has had little communication with R.S.,

- 14 -

and he has never provided shelter, clothing, food, or other support. While incarcerated, a parent is required to affirmatively maintain the parent-child relationship and take advantage of all resources available to him to help maintain his bond with his child. *In re Adoption of S.P.*, 47 A.3d at 830. Here, Father spoke on the phone with Mother during the periods when she had custody of R.S., and he wrote two letters to CYS requesting updates on his child's case after CYS had identified him as R.S.'s father. Making inquiries of CYS, without any further follow-through, is insufficient to fulfill parental duties. *In re D.J.S.*, 737 A.2d 283, 287 (Pa. Super. 1999). Most importantly, and most egregiously, when Father was granted the opportunity to form a bond with R.S. through regular supervised visits once he was released to the halfway house, Father chose to abscond. He did not take responsibility for his actions and attempt to become a better father for R.S., and given his extensive criminal history, there is little indication that he will change his behavior in the near future. *See* N.T. at 72-79. Therefore, termination under § 2511(a)(2) was proper. . . .

In Father's fourth claim of error, he alleges that the court erred by "failing to consider [Father's] extensive efforts to bond with the minor Child while incarcerated." Father testified that he attempted to bond with R.S. during his incarceration by speaking on the phone daily with Mother while she had custody of R.S., requesting photos of R.S., and requesting updates and other information from CYS once he was established as the father. However, Father has only seen R.S. twice since he first became incarcerated in April of 2015. When asked by his counsel whether he had a bond with R.S. during that visit, Father was elusive, stating "I mean, that's the first time I had seen her since I'd been released, so you've got to figure there was a [15-]month gap there." Father also had the following exchange with the Guardian *Ad Litem* on cross-examination regarding his bond with R.S.:

> Q: [W]ould you agree that you have to be there, be in the Child's life to create that bond?
>
> A: Yes.
>
> Q: And the facts are pretty evident here that you have not been able to create that bond with [R.S.] because you've been in prison?

- 15 -

A: That's correct.

. . .

Q: You would have to agree, though, that seeing pictures of somebody and knowing about them is not forming a bond?

A: Yes, I agree with that.

[N.T. Hearing, 4/13/17,] at 69-70. The court considered Father's testimony regarding his communications with Mother and CYS and found that these minimal efforts were not sufficient to overcome the clear and convincing evidence that Father had failed to perform, and was incapable of performing, his essential parental duties. As noted [above], Father's most meaningful opportunity to bond with R.S. was through supervised visits with CYS, and he chose not to take advantage of that opportunity. Therefore, this claim of error is meritless.

Finally, Father claims in his sixth [allegation of] error that the court erred in holding that Father could not remedy the conditions leading to placement in a reasonable period of time. R.S. was initially placed in foster care after being removed from the site of an active methamphetamine lab in October 2015, when Father was incarcerated. As of the date of the hearing, Father expected, based on conversations with his parole officer, to remain incarcerated for at least another four months. He further testified that he would need time to form a bond with R.S. and to obtain a job and housing before she could live with him. When analyzing whether the parent can remedy the circumstances leading to placement in a reasonable period of time, "[i]t is appropriate to rely on past behavior rather than future promises." *In re J.L.C.*, 837 A.2d 1247, 1254 (Pa. Super. Ct. 2003). "Moreover, parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities." *In re D.J.S.*, 737 A.2d at 287. Here, Father acknowledged that he would not be in a position to take custody of R.S. immediately upon his release from prison, but rather would need additional time to obtain a job and stable housing, and to form a bond with R.S., before taking custody of her. R.S. has already spent over two years in foster care. Given that it would take, at minimum, another six months for Father to

- 16 -

be in any position to take full custody of R.S., the conditions that led to R.S.'s placement over two years ago cannot be remedied in a reasonable period of time. Therefore, this claim of error is meritless.

Trial Court Opinion, 6/7/17, at 6-11 (some internal citations omitted).

After a careful review of the record, this Court finds the trial court's conclusion that Father has failed to perform parental duties with regard to R.S., and its termination of his parental rights under section 2511(a)(1), is supported by competent, clear and convincing evidence in the record. **In re Adoption of S.P.**, 47 A.3d at 826-827. Likewise, we find that the trial court's conclusion regarding section 2511(a)(2), that Father has demonstrated a repeated and continued incapacity, abuse, neglect or refusal that has caused the child to be without essential parental care, control or subsistence necessary for R.S.'s physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Father, is supported by competent, clear and convincing evidence. **Id.** Thus, we find no abuse of discretion in the trial court's termination of Father's parental rights to R.S. pursuant to section 2511(a)(1), (2), and (b).

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

- 17 -

Date: <u>11/16/2017</u>